King, J.
This action was brought in the court of common pleas of *146 Williams county to enjoin the defendants, in their official capacity, from issuing certain bonds, twenty-five hundred dollars in amount, or, if the same should have been issued, enjoining tha levy or collection of any taxes to pay the said bonds, This action, after a trial in the common pleas court resulting in a judgment for defendants, is, by petition in error, brought to this court, and is heard here upon the petition and answer and exhibits attached. From these pleadings it appears that on January 4, 1897, the village council of Bryan passed an ordinance, which was, on January 28th published in a proper newspaper. This ordinance is entitled “An ordinance to provide for the issue of bonds to raise money to pay the indebtedness of the village of Bryan arising from the refunding and exchange of the waterworks bonds of said village.” It further appears from the pleadings that on May 16, 1892, the council passed an ordinance authorizing the issue of certain bonds, amounting to $30,000, which bonds were issued and sold for $33,012; and in March, 1893, passed another ordinance providing for the issue of $15,000 of bonds, which bonds were issued and sold. These bonds, these two ordinances recited, were for the purpose of raising money to construct waterworks, and were in pursuance of a special act of the legislature authorizing the village of Bryan to construct waterworks. The $15,000 of bonds were sold for $15,177.25 That on January 18, 1897, an ordinance was passed entitled
“An ordinance providing for the issue of bonds of the village of Bryan, Ohio, in the sum of forty-five thousand dollars, for the purpose of refunding and extending the time of payment of certain indebtedness of said village.”
That ordinance was published on January 21st, and the bonds provided for in it were prepared, duly signed and issued to the owners and holders of the bonds provided for in the two ordinances passed in 1892 and 1893, in exchange for said bonds, and, clearly, with the intention to refund *147 them, the bonds issued under the last named ordinance being for a less rate of interest, perhaps, than the original bonds, and the time of payment was extended some eight years beyond the date fixed by either of the first ordinances, It is a fair construction of the ordinance providing for the issue of these $45,000 of bonds, that it was a refunding ordinance.
.The contention of the plaintiffs is that the issue of the $2,500 worth of bonds provided for under the ordinance of January 4, 1898, is illegal, because it appears from the ordinance itself that it was for the purpose of paying an indebtedness arising out of the refunding of the waterworks bonds. This contention is strenuously denied by the defendants. The whole theory of the defendants’arguments in this case is based upon the proposition that the bonds issued under the first two ordinances — the original waterworks bonds — were illegal, because the act of the legislature authorizing the construction of waterworks and the issue of bonds thereunder to pay for the same, was unconstitutional, and that the bonds issued thereunder were illegal, and being so illegal, the owners and holders of these bonds had a valid claim against the village of Bryan for not only the face value of the bonds, but also as well for any premiums they had paid when they purchased the.same; in other words, it appearing that they had paid for these bonds $48,189.25, that the owners had a claim which they might assert at any time against the village of Bryan for that sum of money, and that it was in recognition of this claim that the council proceeded to do two things.
First, to provide by ordinance for the issuing of $45,000, of legal and valid bonds with which to take up the old ones; and, second, to compromise, adjust and settle the claim for the premiumsTby issuing $2,500 of bonds directly to the owners and holders of the old bonds, and that these owners and holders magnanimously refrained from making any *148 charge for interest. These old bonds, bearing a part of them five per cent,and the balance five and a half per cent., if the owners had a claim for the money advanced, they would clearly be entitled to six per cent, interest upon the sum advanced, and the difference between the amount which had been paid them under the terms of the bonds and that which the law allows upon claims founded upon contracts, express or implied, would be still due to them. This amount of interest (which we have not computed), together with the difference between the $2,500 and $3,379,it is said the owners have thrown off or are not claiming, and that the matter was adjusted and determined in this ordinance of January 4th.
This argument as to premiums paid, or as to the right of the bondholders to maintain an action against the village for the money advanced on the theory that the bonds were illegal, is really not germane to the question at issue. We would not know that there was a refunding ordinance except for the fact that it is pleaded, but the pleading of it does not necessarily render it material to the determination of the question at issue. The ordinance authorizing the Issue of these bonds recites, in the title, that the bonds are issued “to raise money to pay the indebtedness of the village of Bryan arising from the refunding and exchange of the waterworks bonds of said village.” The first section recites that the owners and holders of the $45,000.00 of bonds, having surrendered them to and exchanged them with the village for its bonds issued for the purpose of taking up and refunding said waterworks bonds, at a reduced rate of interest and running for a longer period of time, that in the opinion of the council and so declared that by reason of these premises there is justly and equitably due from said village to the person or persons so surrendering and exchanging said waterworks bonds, at least the sum of $2,500.00. The second section provides for the issue of *149 these $2,500,00 of bonds, and describes them. It is contended by the defendants that this issue of bonds is controlled by and was made under section 2701, Revised Statutes; and this section provides that, for the purpose of extending the time of payment of any indebtedness which the corporation is unable to pay at maturity, or when it appears for the best interest of a municipal corporation, that the council shall have power to issue bonds “so as to change, but not to increase the indebtedness,” in such amounts and at such rates of interest as the council deems proper; and further provides that no indebtedness shall be so refunded or extended until it shall be first determined to be an existing, valid and binding obligation by a formal resolution of the council, which resolution shall also state the amount of the existing indebtedness to be refunded or extended.
The first section of this ordinance may be well held to be such a resolution, in that it declares that this indebtedness is justly and equitably due, and that it is in the sum of $2,500.00, and that the village ought to make provision for its payment and discharge; so that, so far as the resolution is concerned, we think the council complied with that provision of the statute. But when we return to the question of what these $2,500.00 of bonds was issued for, we are, of necessity, confined to the recital contained in this ordinance ■ — for the ordinance passed on January 21st, does not aid us, except as under it it is alleged $45,000.00 of bonds were issued as refunding bonds — issued under the provisions of section 1701, Revised Statutes, it may be, or possibly under the provisions of sections 2711-12, 13 and 14, Revised Statutes, the act passed in 1891. But under either of these statutes, is it an ordinance providing for the issue of refunding bonds? The latter statute provides that a village may refund its indebtedness when it can be done at no higher rate of interest, but not otherwise, and at a rate of interest not exceeding five per cent, per annum, payable *150 semi-annually, and by implication it may be held that the bonds are to be issued in the same amount as those to be taken up and cancelled — while section' 2701, Revised Statutes provides that defendants’ attempt at refunding shall be subject to the limitation that it shall not increase the indebtedness; so that, so far as the indebtedness represented by the bonds outstanding which were refunded under the ordinance of January 21st is concerned, that indebtedness might be changed within the provisions of the statute, but it could not be increased.
Now, the council in passing this ordinance of January 4th, which precedes the other in date, have made their own stipulations and definitions of the indebtedness and the evidences which they propose to issue for the debt. Can we disregard their recitals made in their own interest and upon which the issue of bonds sought to be enjoined is founded ? It must be conceded that if there be no ordinance or resolution authorizing this issue of bonds, then they would be illegal. The bonds rest for their validity upon the provisions of this ordinance, and none other, and the provisions of any other ordinance not referring to them do not aid the defendants in their authority or right to issue these bonds.
We must turn to this ordinance, then, to ascertain what it was that the council were issuing bonds for, and to find out, if possible, what indebtedness it was proposed to pay or liquidate by their issue. There is nothing in this ordinance, nor any other to which we are referred, that fixes this indebtedness as any other than that arising from the expense of the refunding and exchange of the waterworks bonds. Now, if that is the source of this indebtedness, then no statute gives to the defendants the power to issue these bonds, for, the refunding of an indebtedness must be without increasing it, as I have before stated; The first section of the ordinance declares that by reason of taking up and refunding the former issue of waterworks bonds “there is *151 justly and equitably due from said village to the person or persons so surrendering or exchanging said waterworks bonds at least the sum of $2,500.00.” This is all that is said about the debt or its origin in the ordinance, and that amounts to but little, if anything. We may, then, look at the title, and here we get a little more light; for we are told that the debt arises from the operation or process of exchanging and refunding the waterworks bonds. But in neither the title nor the ordinance are we told in what manner or how it was that this indebtedness was incurred in making this exchange — how it was that the village became-indebted to the owners of the old bonds in the sum of’ $2,500.00. We are left entirely to assumption on that ground; we are left entirely to the argument of counsel who-say “why, it is evident from the answer in the case that when these bonds were sold at public auction to the highest bidder, .that the owners who purchased bid $3,300.00 more and above the par value of these bonds.” Again, we are told in argument that the law under which these bonds were-issued was unconstitutional, though it never yet has been-so adjudged, and that the owners and holders might surrender the bonds and have a claim against the corporation-for the amount of money they had advanced.
We take no stock in the argument that they might secure from the corporation more money by throwing up this illegal contract, into which they had knowingly and voluntarily entered, than they could have obtained by living up to its terms. But, without discussing that, the whole basis for this argument rests upon facts which appear in other ordinances, that there did exist in the minds of the bondholders a claim which possibly they might have asserted; but the ordinance under which these bonds were issued tells-us in its recital that these bonds are issued to pay an in *152 debtedness arising from refunding these bonds. Now, if they may not increase that indebtedness — and the statute so reads — then they may not by a separate contract, or a separate resolution, create, originate or establish an indebtedness which, added to the refunding bonds, would increase the original debt. This transaction stands upon the face of it as if, by a valid ordinance, the counsel had undertaken to refund certain of its bonds, and perhaps for the reason that those bonds were not.yet due, had offered to the owners and holders a bonus of $2,500.00 to come in and exchange them. That is this transaction, fairly, reasonably and justly construed. It does not need discussion nor elaboration to show that such a transaction would be illegal, as we must hold this to be,
, It is urged that the bonds were issued before the allowance of this injunction, and therefore the injunction would be futile, or would affect the bonds in the hands of innocent purchasers who are not parties to this action and who ought to be made such parties before an injunction should be allowed; and it is also urged that no injunction ought in any event to be allowed because it would affect the title and right of these innocent purchasers to the bonds in question.
We are not disposed to determine what are or would be the rights of innocent purchasers of these bonds. The ordinance, as I have before stated, was passed on January 28th. If it is one of those within the provisions of the statute providing that it shall take effect ten days after its passage, it did not take effect until February 7th, and on February 6th, the temporary injunction allowed in this case was served upon defendants. We do net think it necessary to determine whether the publication was necessary, of this ordinance, or not. The ordinance itself, by its own terms, provided that it should take effect from and after its due passage and publication. This would seem to imply that it was necessary to publish it before it could go into effect. *153 But the ordinance also provides that the bonds in question should be dated March 1, 1897. A copy of one of the bonds, attached to the answer, shows that it was dated March 1, 1897, and the officers who signed it certify over the corporate seal of the village that they did on March 1, 1897, affix their hands and seals thereto. We think these bonds could not have been legally sold until signed by the officers required or authorized by law to sign them, and as the bond shown as an exhibit appears upon its face to hare been signed upon March 1st — we will not assume that it was signed earlier,for that would contradict the recital of the bond; nor do we think the bond could have been legally sold before it was authorized to be issued, and the authority to issue provided that it could be issued on March 1st, or thereafter. We think if these bonds were issued in January, as is alleged and claimed in the answer, before the expiration of the ten days after publication of notice, before the bonds were to be dated, and before the officers signed or executed them, the purchasers and holders cannot claim to be innocent purchasers and holders, and that contention will not avail the defendants. We 2nd, therefore, that the plaintiffs were entitled to an injunction as prayed for in the petition.
Therefore, because the judgment rendered by the court of common pleas is contrary to law, the same will be reversed, and this court proceeding to render the judgment which the court below ought to have rendered, we order and decree that the injunction prayed for be granted and made perpetual.
We also hold under the statutes that plaintiff’s attorneys should be entitled to recover as a part of the costs in the action which it is adjudged that defendants must pay, reasonable counsel fees, both for their services in the court of ..common pleas and in the circuit court, which reasonable counsel fees we find and adjudge to be $250, and order *154 these to be paid by defendants, and also that defendants pay the costs of this action.
John M. Killits and John B. White, for Plaintiffs.
C. S. Bentley, M. M. Boothman and Scott & Schrieder, for Defendants.